# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JACK JUDGE, JR. : 
: CIVIL ACTION
      Plaintiff, :
   v. :
:
PHILADELPHIA PREMIUM OUTLETS, : NO. 10-1553
et al. :
:
      Defendants. :

## MEMORANDUM

BUCKWALTER, S. J.                                                                                                    June 8, 2010

      Currently pending before the Court is the Motion of Plaintiff Jack Judge, Jr. for Remand. For the following reasons, the Motion is denied.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

      Plaintiff Jack Judge, Jr. commenced this lawsuit against Defendants Philadelphia Premium Outlets, Chelsea Limerick Holdings, LLC, Chelsea Property Group, Inc., Simon Property Group, Inc. a/ka and/or d/b/a and/or t/a Simon Property Group, LP and/or Simon Property Group Delaware, Inc., Ann Taylor Stores Corp. a/k/a and/or d/b/a and/or t/a Ann Taylor Retail Inc. and/or Ann Taylor, Inc. and/or Ann Taylor, Ann Taylor Loft Outlet Store 2909 Philadelphia Premium Outlet, ABM Inc. Building Maintenance a/k/a and/or d/b/a/ and/or t/a ABM Engineering Service Company and/or AMB Industries Inc. and/or ABM, and HGO Inc. Building Maintenance Services a/k/a and/or d/b/a and/or t/a HGO Services, Inc. and/or HGO Corporation and/or HGO Incorporated Building Services (collectively "Defendants") in connection with an injury he received on Defendants' property. According to the Complaint, on

December 7, 2007, Plaintiff was on a walkway adjacent to Defendants' Ann Taylor Loft Outlet Store in Limerick, Pennsylvania. (Compl. ¶ 18.) While walking, he tripped over an unsecured and unfastened electrical extension cord located on the walkway of Defendants' property and connected to an illuminated holiday decoration. (Id.) He stumbled and fell to the ground, resulting in injury. (Id.)

On December 3, 2009, Plaintiff initiated litigation in Philadelphia County Court of Common Pleas against the various Defendants on grounds of negligence. (Id. ¶¶ 28-67.) Defendant Chelsea Property Group, Inc. was served with the Complaint on December 14, 2009 via certified mail. Defendants Philadelphia Premium Outlets, Chelsea Limerick Holdings, LLC, and Simon Property Group, Inc. were served with a copy of the Complaint on December 22, 2009. Defendants removed the case to the United States District Court for the Eastern District of Pennsylvania on April 8, 2010, and, on May 7, 2010, Plaintiff moved to remand the case back to state court. Defendants filed a response to that Motion on May 21, 2010 and Plaintiff submitted a Reply Brief on June 4, 2010.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1441(a), a defendant may remove a civil action filed in a state court if the federal court would have had original jurisdiction over the action. 28 U.S.C. § 1441(a). A defendant seeking removal of an action must file a petition for removal with the district court within thirty days of plaintiff's service of the complaint upon defendant. See 28 U.S.C. § 1446(b). "The defendants bear the burden of establishing removal jurisdiction and compliance with all pertinent procedural requirements." Winnick v. Pratt, No. CIV.A.03-1612, 2003 WL

21204467, at *2 (E.D. Pa. May 20, 2003) (citing Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990)).

Once an action is removed, a plaintiff may challenge removal by moving to remand the case back to state court. Cook v. Soft Sheen Carson, Inc., No. CIV.A.08-1542, 2008 WL 4606305, at *1 (D.N.J. Oct. 15, 2008). Remand to the state court is appropriate for "(1) lack of district court subject matter jurisdiction or (2) a defect in the removal process." PAS v. Travelers Ins. Co., 7 F.3d 329, 352 (3d Cir. 1993). Remand is mandatory and can occur at any time during the litigation if the court determines that it lacks federal subject matter jurisdiction. Kimmel v. DeGasperi, No. CIV.A.00-143, 2000 WL 420639, at *1 (E.D. Pa. Apr. 7, 2000) (citing 28 U.S.C. § 1447(c)). A motion to remand the case on the basis of any defect in the removal procedure, however, must be submitted within thirty days after filing of the notice of removal under section 1446(a). 28 U.S.C. § 1447(c); N. Penn Water Auth. v. BAF Sys. Aerospace Elec., Inc., No. CIV.A.04-5030, 2005 WL 1279091, at *5 (E.D. Pa. May 25, 2005). When considering such a motion, "any doubts about the existence of federal jurisdiction must be resolved in favor of remand." Lumbermans Mut. Cas. Co. v. Fishman, No. CIV.A.99-929, 1999 WL 744016, at *1 (E.D. Pa. Sep. 22, 1999) (citing Batoff v. State Farm Ins. Co., 977 F.2d 848, 851 (3d Cir.1992)); see also Boyer, 913 F.2d at 111 (The removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand.") (quoting Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987)).

**III. DISCUSSION**

In their current Motion, Plaintiff notes that Defendants did not file their Petition for Removal until April 8, 2010. Because this date was more than thirty days after service of the Complaint on Defendants, Plaintiff contends that the matter must be remanded to the Philadelphia County Court of Common Pleas. The Court disagrees.

Under 28 U.S.C. § 1446(b):

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of the summons upon the defendant if such initial pleading has then been filed in court is not required to be served on the defendant, whichever is shorter.

Id. § 1446(b).

The United States Court of Appeals for the Third Circuit, following the United States Supreme Court's decision in Murphy Bros. v. Michetti Pipe Stringing, 526 U.S. 344 (1999), has held that a summons may not serve as an "initial pleading" for purposes of triggering the thirty-day removal period of 28 U.S.C. § 1446(b). Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 222 (3d Cir. 2005). Rather, the reference to "initial pleading" in section 1446(b) describes the complaint, not the summons or praecipe for writ of summons. Sikirica, 416 F.3d 214, 223 (3d Cir. 2005); Polanco v. Coneqtec Universal, 474 F. Supp. 2d 735, 737 (E.D. Pa. 2007). "Thus, removal is not proper until a complaint has been served on the defendants." Campbell v. Oxford Elec., Inc., No. CIV.A. 07-541, 2007 WL 2011484, at *2 (E.D. Pa. Jul. 5, 2007). "Where . . . the defendants are served with a summons and the complaint is filed at a later date, the thirty day

4

period commences from the time the defendants received a copy of the complaint." Polanco, 474 F. Supp. 2d at 737 (E.D. Pa. 2007) (citing Murphy Bros., 526 U.S. at 354).

When the basis for removal is diversity jurisdiction and a complaint does not clearly disclose that the requisite statutory amount is in controversy, however, the start date for the thirty-day removal period is not as clear-cut.[1] "It is not necessary that the amount in controversy be stated in the initial pleading in order to trigger the running of the thirty-day period for removal. Rather, the thirty-day period begins to run when a defendant can reasonably and intelligently conclude from the pleadings that the amount in controversy exceeds the jurisdictional minimum." Sims v. PerkinElmer Instruments, LLC, No. CIV.A.04-3773, 2005 WL 746884, at *2 (E.D. Pa. Mar. 31, 2005) (quoting Carroll v. United Air Lines, Inc., 7 F. Supp. 2d 516, 521 (D.N.J. 1998)). The general rule is to decide the amount in controversy from the face of the complaint. Angus v. Shiley Inc., 989 F.2d 142, 145 (3d Cir. 1993). Where the complaint specifically limits the amount in controversy to less than the jurisdictional minimum, the proponent seeking removal must prove to a legal certainty that the amount in controversy exceeds the statutory threshold of $75,000 for diversity cases. Frederico v. Home Depot, 507

---

[1] Under 28 U.S.C. § 1332(a):

> district courts . . . have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between – (1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

28 U.S.C. § 1332(a).

F.3d 188, 197 (3d Cir. 2007). Where the plaintiff has not expressly limited the amount in the complaint to less than the jurisdictional minimum, the plaintiff, when challenging federal jurisdiction, bears the burden of proving to a legal certainty that the amount in controversy could not exceed the jurisdictional threshold. Id. at 197. In cases with demands of indeterminate value, "the amount in controversy is not measured by the low end of an open-ended claim, but rather by reasonable reading of the value of the rights being litigated." Angus, 989 F.2d at 146. A court must engage in an objective independent appraisal of the claim's value to determine whether the amount in controversy is satisfied." Id. Estimations of the total damage must be realistic and not based on "fanciful 'pie-in-the-sky' or simply wishful amounts." Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 403 (3d Cir. 2004).

Multiple cases have held that when a complaint fails to specifically allege damages that permit a defendant to conclude, to a legal certainty, that the amount in controversy requirement is met, the removal period is not triggered by service of the complaint. See, e.g., Inaganti v. Columbia Prop. Harrisburg LLC, No. CIV.A.10-1651, 2010 WL 2136597 (E.D. Pa. May 25, 2010) (allegations of seemingly serious injuries of "an unknown nature" with no estimation of medical costs or lost earnings and an *ad damnum* clause seeking damages "in excess of $50,000" did not put defendant on notice that amount in controversy requirement was met); Bishop v. Sam's East, Inc., No. CIV.A.08-4550, 2009 WL 1795316, at *3-4 (E.D. Pa. Jun. 23, 2009) (where complaint contains general boilerplate allegations that plaintiff suffered a variety of "ills and injuries" and "psychological and emotional disorders" that have deprived her of "life's pleasures," an *ad damnum* clause seeking damages "in excess of $50,000" does not place defendant on notice of an amount in controversy in excess of $75,000); Brown v. Modell's PA II,

6

Inc., No. CIV.A. 08-1528, 2008 WL 2600253, at *2 (E.D. Pa. Jul. 1, 2008) (remarking that "plaintiff's complaint included allegations of apparently serious medical injuries, but it did not include any monetary amount of damages other than damages 'in excess of $50,000,'" which "did not put defendants on notice that the $75,000 amount in controversy requirement had been met"); Admiral Paycheck Servs., Inc. v. Paychex, Inc. No. CIV.A.07-0066, 2007 WL 2670287, at *3 (W.D. Pa. Sep. 7, 2007) (holding that complaint which alleged injuries due to loss of integrity and reputation, loss of business, and impairment of future earning capacity, but only specified that relief sought was in excess of $25,000 did not put defendant on notice to a legal certainty that $75,000 amount in controversy requirement was met); Marchiori v. Vanguard Car Rental USA, Inc., No. CIV.A.05-5685, 2006 WL 724445, at *2 (E.D. Pa. Mar. 17, 2006) (finding that although complaint alleged multiple specific and seemingly serious injuries to plaintiff, where *ad damnum* clause only sought an amount "in excess of $50,000," the allegations were not sufficient to put defendant on notice that the claimed damages were in excess of the federal threshold for removability); Miranda v. Southland Corp., No. CIV.A.91-3267, 1991 WL 142648, at *2 (E.D. Pa. Jul. 22, 1991) (where the *ad damnum* clause sought relief in excess of $20,000 and the complaint was couched in boilerplate language that provided no indication as to the actual cost to plaintiff of medical treatment received, the amount of earnings lost as a result of the injury, the potential costs of future medical treatments, or the amount of projected loss of future earnings, defendant could not have justifiably filed a notice of removal until after receipt of discovery verifying that the amount in controversy exceeded the requisite amount).

In such cases where it is not apparent from the face of the complaint that the amount in controversy requirement has been satisfied, the second paragraph of section 1446(b) provides for an alternate thirty day removal period, as follows:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or *other paper* from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

28 U.S.C. § 1446(b) (emphasis added). The Third Circuit has yet to clearly define "other paper." Bishops, 2009 WL 1795316, at *4 (noting absence of a Third Circuit decision on this issue). "The statute, however, is clear that the time for removal begins to run when the defendant receives the requisite written notice of facts which make the case removable. The statutory requirement of a writing reduces disputes over knowledge of diversity or the amount in controversy and helps avoid later battles of credibility between opposing parties and lawyers." Broderick v. Dellasandro, 859 F. Supp. 176, 178 (E.D. Pa. 1994). As summarized by Wright and Miller, courts have generally found that,

> after an unremovable action has been commenced in state court and the defendant has been served with the summons, or the summons and complaint if state law requires, various discovery documents such as deposition transcripts, answers to interrogatories and requests for admissions, as well as amendments to ad damnum clauses of complaints, and correspondence between the parties and their attorneys or between the attorneys usually are accepted as 'other papers,' receipt of which can initiate a 30-day period of removability.

14C CHARLES ALAN WRIGHT, ARTHUR R. MILLER, EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3731, 547 (4th ed. 2009). (footnotes omitted); see, e.g., Bishop, 2009 WL

1795316, at *4 (finding that plaintiff's reply to defendant's new matter clearly constitutes "other paper"); Brown, 2008 WL 2600253, at *3 (holding that requests for admissions qualify as "other paper" sufficient to trigger the removal period); Marchiori, 2006 WL 724445, at *2 ("Plaintiff's response to the removing defendants' first request for admissions constituted the 'other paper' that first notified defendants that the case was removable."); Efford v. Milam, 368 F. Supp. 2d 380, 385-86 (E.D. Pa. 2005) (holding that letter from plaintiffs' attorney to defendants' attorney was "other paper," and thus was sufficient to trigger thirty-day period for defendants to remove case to federal court where letter was sent in response to letter by defendants' counsel inquiring about basis for lawsuit, letter indicated that complaint had already been drafted, and letter stated that facts supported civil claim under Racketeer Influenced and Corrupt Organizations Act (RICO)); Cabibbo v. Einstein/Noah Bagel Partners, L.P., 181 F. Supp. 2d 428, 432-33 (E.D. Pa. 2002) (holding that section 1446(b)'s reference to "other paper" encompasses answers to interrogatories); Broderick, 859 F. Supp. at 179-180 (finding that attorney correspondence confirming plaintiff's residency was an "other paper" sufficient to trigger the thirty-day removal period). This "embracive scope" of "other paper" has been justified on the grounds that "[t]he intent of § 1446(b) is to make sure that a defendant has an opportunity to assert the congressionally bestowed right to remove upon being given notice in the course of the case that the right exists, and that information obtained from less formal sources like a deposition serves that purpose." Efford, 368 F. Supp. 2d at 385 (quotations omitted).

In the present case, the damages allegations of the Complaint state as follows:

30. Solely as a result of the aforesaid occurrence, Plaintiff has been rendered sick, sore, lame and prostrate and has sustained multiple injuries to the neck, back, and right wrist resulting in a possible injury to the muscles,

9

>     nerves, disks, bones and ligaments connected thereto; and a shock to the
>     nerves and nervous system. Plaintiff has endured and continues to endure
>     great pain and suffering and/or aggravation of pre-existing conditions.
>
> 31. As a result of this accident, plaintiff has been or will be obliged to receive
>     and undergo medical attention and care, and to expend various sums of
>     money and/or incur expenses for the injuries he has suffered; and he may
>     be obliged to continue to expend such sums for an indefinite period of
>     time in the future, perhaps permanently.
>
> 32. As an additional result of the accident aforesaid, plaintiff has suffered
>     injuries which are or may be permanent in nature, and has suffered and
>     will in the future continue to suffer great pain and agony, and has, will and
>     may be unable to attend to daily duties, occupations, labors and
>     employment, thereby losing the emoluments of his industry, and has
>     suffered a loss, diminution and depreciation of his earnings and future
>     earning capacity, and which will continue for an indefinite time in the
>     future, all to his great and continuing detriment and loss.

(Compl. ¶¶ 30-31; see also Id. ¶¶ 35-37, 40-42, 45-47, 50-52, 55-57, 60-62, 65-67.) The *ad damnum* clauses in the Complaint seek only an amount "in excess of" $50,000, together with interest, court costs, attorneys fees, "and such other relief as this Honorable Court may deem just and appropriate." (Compl. pp. 8, 10, 13, 15, 17, 20, 22, 24.)

Nothing in these allegations, standing alone, gives Defendants adequate notice that the amount controversy satisfies the statutory requisite of $75,000. The Complaint contains only boilerplate allegations that Plaintiff suffered a variety of physical injuries and some loss of earning capacity. While these injuries are seemingly serious, Plaintiff identifies no medical condition, aside from general damage to his neck, back, and right wrist. Moreover, Plaintiff provides no indication as to the actual cost of medical treatment received, amount of earnings lost, or amount of projected future medical treatments or lost wages. Above all, Plaintiff states

only that the total amount of the injuries is "in excess of $50,000." Taken together, these allegations simply do not permit Defendants to conclude, to a "legal certainty," that the damages claims meet the threshold for federal diversity jurisdiction.

In an effort to counter this logical conclusion, Plaintiff offers several arguments. First, he contends that the simple fact that damages were alleged to be at least "in excess of $50,000," should have alerted Defendants that the requested damages could have easily exceeded $75,000. The Court disagrees with this reasoning. "[I]n counties, such as Philadelphia County, that have compulsory arbitration, state law requires the plaintiff to state whether 'the amount claimed does or does not exceed the jurisdictional amount requiring arbitration referral.'" Dunfee v. Allstate Ins. Co., No. CIV.A.08-1425, 2008 WL 2579799, at *7 (E.D. Pa. Jun. 26, 2008) (quoting PA. R. CIV. PRO. 1020(c)). The amount to avoid compulsory arbitration in Philadelphia County is $50,000. 42 PA. CONS. STAT. § 7361(b). By alleging an amount "in excess of" $50,000, Plaintiff was simply complying with the state law obligation to either invoke or avoid arbitration in state court. In doing so, Plaintiff did not place Defendants on notice, to a legal certainty, that the amount in controversy was in excess of $75,000. See Brown, 2008 WL 2600253, at *2.[2]

---

[2] Plaintiff also relies on the case of McMonagle v. Franklin Mills Assoc., LP, No. CIV.A.06-4451, 2007 WL 773715 (E.D. Pa. Mar. 8, 2007), wherein the court found that allegations of permanent injuries, continuing medical care, and a loss of earning capacity, coupled with a demand in excess of $50,000, would allow a "reasonable reading" of the complaint to show damages in excess of $75,000. Id. at *2. In turn, the court determined that the thirty-day removal window began to run on April 13, 2006, the day the complaint was served, thereby making the October 5, 2006 notice of removal untimely. Id.
    While McMonagle supports Plaintiff's position, that case does not persuade this Court to alter the ruling. First, the McMonagle opinion does little to explain the basis behind the ultimate decision. Rather, the court concluded, with almost no reasoning, that the boilerplate damages allegations, considered in conjunction with the demand for a sum in excess of $50,000, was sufficient to put defendant on notice that the amount in controversy was above $75,000. Id.

Alternately, Plaintiff contends that he filed his Complaint as a "Major Jury Complaint," which "alone leads a reasonable person to conclude that the amount in controversy is in excess of the statutory minimum of $75,000.00." (Pl.'s Mot. for Remand 8.) Plaintiff goes on to cite the Merriam-Webster Dictionary's definition of "major," as meaning "greater in number, quantity or extent; greater in dignity, rank, importan[ce], or interest; notable or conspicuous in effect or scope." (Id.) This argument is meritless. Under the Philadelphia Local Rules a "major jury civil action" is a term of art meaning "a civil lawsuit seeking greater than $50,000 in damages where a jury has been requested." Gartland v. Rosenthal, 850 A.2d 671, 678 n.5 (Pa. Super. Ct. 2004) (citing PHILA. CIV. R. 215(A)(2)). Nothing in that terminology signifies or suggests that the suit satisfies the federal statutory amount in controversy of $75,000.

Having thus determined that the Complaint, standing alone, did not put Defendants on notice that the requisite federal jurisdictional amount was in controversy, the Court's next step is to determine if and when the thirty-day removal period began running. According to the evidence provided by Defendants, defense counsel Michael Bogdanoff[3] telephoned Plaintiff's counsel, Patrick Rodden, on December 22, 2009 – the same day the Complaint was served on the last of his clients. (Def.'s Resp. Mot. Remand, Ex. B, Decl. of Michael Bogdanoff ("Bogdanoff Decl.) ¶ 4, May 21, 2010.) During that conversation, he specifically inquired as to the value of

---

Second, as discussed in detail above, numerous other well-reasoned opinions have reached the opposite conclusion on similar facts. See, e.g., Bishop, 2009 WL 1795316, at *3-4; Brown, 2008 WL 2600253, at *2; Admiral Paycheck. 2007 WL 2670287, at *3; Marchiori, 2006 WL 724445, at *2.

[3] Mr. Bogdanoff is counsel for Defendants Philadelphia Premium Outlets, Chelsea Limerick Holdings, LLC, Chelsea Property Group, Inc., Simon Property Group, Inc., Ann Taylor Stores Corp., and Ann Taylor Outlet Store 2909 Philadelphia.

the case, in order to determine the amount in controversy. (Id.) Plaintiff's counsel responded that he was unable to provide the value of the case and would follow up at a later date. (Id. ¶ 5.) There was no such return contact. (Id. ¶ 6.)

Subsequently, on March 9, 2010 – approximately two and a half months after service of the Complaint – a Case Management Conference was held in state court, at which time Plaintiff supplied a Case Management Conference Memorandum. (Def.'s Resp. Mot. Remand, Ex. C.) That Memorandum revealed that Plaintiff had sustained "disc herniation at L5-S1, cervical disc bulges . . . cervical radiculopathy involving the right nerve [r]oot and the left C8/T1 nerve root[,] right wrist injury, bony fragment." (Id.) Plaintiff also indicated that his injuries were permanent, he had undergone epidural steroid injections, and treatment was continuing. (Id.) Further, his approximate medical bills to date were approximately $25,000 and lost wages were "[t]o be supplied." (Id.) Finally, when asked to give a settlement demand, Plaintiff indicated that it was "[u]ndetermined at this time because of the possibility of future medical care including lumbar surgery and resulting future wage loss." (Id.) Based on the information gleaned from this Memorandum – including the specific injuries, the need for future surgery, and the existing and anticipated wage loss – Defendant concluded, to a legal certainty, that Plaintiff's damages exceeded the $75,000 threshold. This Memorandum clearly falls within the broad definition and "embracive scope" of "other paper" for purposes of the second paragraph of 28 U.S.C. § 1446(b).

To the extent Plaintiff suggests that Defendants' failure to actively take discovery regarding the amount in controversy evidences a lack of diligence, the Court disagrees. According to the undisputed evidence, defense counsel immediately contacted Plaintiff's counsel

13

after service of the Complaint in December 2009, in an effort to determine the damages sought. Plaintiff's counsel promised to provide that information, but never did so.[4] On February 12, 2010, less than two months later, the state court listed the case for a Case Management Conference on March 9, 2010. Defendants' decision to wait until that conference to ascertain the previously-promised information, in lieu of pursuing discovery and awaiting Plaintiff's responses, was a reasonable litigation strategy. Twenty-nine days after the conference and receipt of the Case Management Memorandum, Defendants filed their Notice of Removal.

In sum, the Court finds that the removal period in this case did not begin until March 9, 2010. Defendants' Notice of Removal, filed on April 8, 2010, was therefore within the thirty-day removal period, making it timely. Accordingly the Court denies the Motion for Remand.

An appropriate order follows.

---

[4] In his Reply Brief, Plaintiff argues that defense counsel never specifically asked, during the December 22, 2009 phone call, whether the amount in controversy was in excess of $75,000. Rather, he inquired only as to the "value of the case." Plaintiff goes on to note that had defense counsel specifically asked, he would have advised that the amount in controversy was above $75,000.
   The Court finds this argument unconvincing on two grounds. First, Plaintiff's counsel fails to put his factual assertions into any form of declaration, affidavit, or other sworn statement. Second, defense counsel was correct to assume that if Plaintiff's counsel was unable to place a reasonable value on his case as of December 2009, he would be similarly unable to state, to a legal certainty, that the amount in controversy exceeded $75,000.